## Gilbert, et al. v. Pace.

(Decided January 17, 1928.)

### Appeal from Owsley Circuit Court.

Appeal and Error.—Where, from the record and testimony, the reviewing court could not ascertain the facts as to whether a title bond in controversy was a forgery, it declined to disturb the chancellor's judgment thereon, since he was in a better position to weigh the evidence.

JOHN M. QUINN, C. W. HOGG, IKE WILDER and S. H. RICE for appellants.

ROSE & STAMPER and H. C. EVERSOLE fror appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The determination of the questions involved in this litigation depends upon arriving at a conclusion as to

whether a certain title bond purporting to have been executed by Abe Gilbert and his wife, Elizabeth Gilbert, to Farris Gilbert on June 25, 1909, is a forgery. The title bond purports to have been signed by Abe Gilbert and Elizabeth Gilbert in the presence of Willis Barger, John Sandlin, and Lilly Sandlin. It is claimed that Farris Gilbert assigned this bond to his wife, Mary Gilbert, on May 7, 1913, by his written indorsement thereon in the presence of Martha Gabbard and Buddy McIntosh. He thereafter died, and his widow, Mary Gilbert, married again, and she is now the appellee, Mary Pace. The appellants are the heirs at law of Abe Gilbert and his former widow, Elizabeth Gilbert, who at the time of giving her deposition was Elizabeth Hacker. The widow had sold her dower interest to Abe Hacker in the land, and he is also an appellant, and Robert Hacker had purchased from the heirs of Abe Gilbert the land described in the title bond, or at least a portion of it, and he is also an appellant.

We have rarely, if ever, seen a record where it was so difficult to be reasonably certain as to the truth of matters testified about by the witnesses. It appears that there may have been perjury, subornation of perjury, bribery, attempted bribery, forgery, and probably other high crimes and misdemeanors in connection with the matters involved in this litigation. The final determination of the case means that either the appellee or the appellants will be adjudged the owner of a farm which, according to the proof, is worth about $300.

Abe Gilbert has been dead for some years, and Farris Gilbert was killed a few years ago. We shall give brief consideration to the testimony in the case. Elizabeth Gilbert, that is, she who was Elizabeth Gilbert and the widow of Abe Gilbert, testified she did not sign the title bond executed to Farris Gilbert, and that she had no knowledge about it at all until many years after it is purported to have been executed. Noah Gilbert testified that he wrote the title bond and that it was written at his home. Abe Gilbert came to his home for the purpose of getting him to write the bond. After it was written he signed the name of Abe Gilbert to the bond by his direction. At the time the bond was written, Abe Gilbert told Noah Gilbert that he was receiving some cattle and a horse in payment for the land. Sara J. Gilbert, the wife of Noah Gilbert, testified that she remembered the occa-

sion when Abe Gilbert and Elizabeth Gilbert came to her home and had her husband to write the title bond. She also heard the conversation about the cattle and the horse. She testified further that long after the title bond had been executed by Abe Gilbert and Elizabeth Gilbert that she had a talk with Elizabeth Gilbert, who told her that she remembered all about signing the bond and that she did sign it. At the same time she testified that Elizabeth Gilbert said that if she was called on as a witness she would state that she signed the bond and that everything she knew about it was in favor of the appellee. Noah Gilbert, who wrote the title bond, was a cousin of Abe Gilbert. Walter Bishop testified in the case that he had seen the title bond while Farris Gilbert had it, and that he had heard Elizabeth Gilbert say that she and her husband, Abe Gilbert, executed a title bond to Farris for about 100 acres of land, and he had heard her say that they received for the land from Farris Gilbert a yoke of steers, a horse, and some other property. James Baker testified that he was at the home of Noah Gilbert when the title bond was written, and that Abe Gilbert and Elizabeth Gilbert were both there, as well as Willis Barger, John Sandlin and Lilly Sandlin. He heard Abe Gilbert state on that occasion that he was executing the title bond to Farris Gilbert. This witness not only saw Noah Gilbert write the title bond, but he heard him read it to the parties. William Bishop testified that he saw the title bond while it was in the possession of Farris Gilbert, and that he had discussed it with the Hackers before they purchased the land described in the title bond.

In opposition to the statement of Elizabeth Gilbert, now Hacker, that she did not sign the bond, there is the evidence of more than one witness who testified that she had told them she signed the bond, and there is the evidence of at least three witnesses that they saw the bond written and that she was present at the time.

Willis Barger, whose name is signed as a witness to the signature of Abe Gilbert and Elizabeth Gilbert, testified that he did not see the bond written and that he knew nothing whatever about it. He testified that he did not witness the signatures of Abe Gilbert and Elizabeth Gilbert. John Sandlin testified that he did not know anything about the bond, and that he did not witness the signatures of Abe Gilbert and Elizabeth Gilbert. Lilly

Sandlin also testified that she was not a witness to the bond and knew nothing about it. As against this is the testimony of witnesses that at least two of these parties, and probably all three of them, had told them on different occasions that they saw the bond written, and that they were witnesses to the signatures. There is proof showing that efforts had been made to induce these witnesses to testify for appellee. There is also proof that a title bond purporting to have been executed by Abe Gilbert to a portion of his land was forged after his death. There is proof that appellee had a forged deed in her possession presumably describing the same land as that described in the title bond, and that she attempted to get the clerk to record it, going to the extent of offering to divide the land with him if he would place it on record. There is proof that an effort had been made to bribe witnesses in regard to other matters. Some of this proof is competent and some of it is incompetent. A court does not know what to believe when the evidence is so contradictory and where there is evidence that efforts had been made to obtain perjured testimony. We do not find where the reputation of Noah Gilbert or that of his wife is attacked, and we find no evidence in the record that tends to impeach them in any way. They were related to appellants, and so far as we find in the record they were in no way related to appellee except that she had been at one time the wife of Farris Gilbert. The evidence of Noah Gilbert might have been more definite and certain, yet after the laps of nearly 20 years it is not strange that his memory did not serve him better. His evidence that Abe Gilbert and Elizabeth Gilbert came to his home, and that he prepared a title bond from them to Farris Gilbert, is positive.

That Farris Gilbert wrote the indorsement on the face of the bond assigning it to the appellee who at the time was his wife is fairly well established by the evidence. That those who now own a portion of the land by purchase were advised that the title bond was outstanding prior to the purchase of the land is supported by strong evidence, although there is strong evidence on their part that they had no knowledge of the title bond until after they purchased the land.

The appellee has sought and obtained a cross-appeal, and is making complaint that Elizabeth Gilbert had not been assigned dower at the time she conveyed her dower interest in the land, and for that reason she had nothing

but a homestead in the land and her attempted conveyance was void. As to whether dower had been assigned to Elizabeth Gilbert we are unable to say from this record. It may be that it had not been assigned at the time. The deed which is introduced in evidence appears to be an agreement on the part of Elizabeth Gilbert to convey her dower interest. She "binds herself to convey to the second party her lifetime dowry." It may be that dower had not been assigned, and it may be that the intention of Elizabeth Gilbert was to convey her dower interest after it had been assigned. She elected to take dower and not homestead, as is indicated by the deed which she executed.

We do not know from the record and from the testimony introduced whether the title bond was a forgery, or whether it was valid. We do not know what the facts are, and for that reason this court does not feel that it should disturb the judgment of the chancellor. He was in better position to weigh the evidence than we are.

Judgment affirmed on the original and cross appeals.